## GEORGE C. MULFORD v. PETER A. TUNIS.

The plaintiff claimed title under a deed made to him by one David J. Ward, dated August 29th, 1866. After this conveyance, judgments were obtained and executions issued against Ward, by virtue of which the premises in question were sold as Ward's property. They were purchased at the sale by one Pierson, who afterwards conveyed them to the defendant. It was alleged by the defendant that the deed from Ward to the plaintiff was made to hinder and delay creditors, and void under the statute of frauds. The verdict and judgment below were for the defendant. A writ of error having been brought, it was *held—*

1. That as the deed from Ward to the plaintiff was found to be void as against creditors, the sale by the sheriff to Pierson vested in him the legal title to the premises, and conveyed to him all Ward's interest.

2. That the payment by Ward of the consideration money for the deed from Pierson to the defendant, did not destroy the title acquired from the sheriff.

3. That the court, in the action of ejectment, could deal only with the legal title, and could not inquire as to who, by reason of any implied or resulting trust, arising from the payment of the consideration money for the deed under which the defendant makes title, was the beneficial owner of the property.

4. The wife of Ward, who was a party to the fraudulent deed, was a competent witness for the defendant, to testify what was her intent and purpose in making the deed—that she did not understand, at the time or before, that any payment was to be made for the conveyance, and that she was not willing to part with the property.

5. The question propounded to one of the witnesses of the plaintiff, "Was the transaction of passing the title and paying the money conducted in the ordinary way that such transactions are conducted?" was incompetent and properly rejected by the court, because not proving, or tending to prove, that the object of the parties was to hinder, defeat, and defraud creditors.

---

Error to the Circuit Court of the county of Morris.

The errors assigned are set forth in the opinion of the court.

Argued before BEASLEY, CHIEF JUSTICE, and Justices DALRIMPLE, DEPUE, and VAN SYCKEL.

For plaintiff in error, *H. C. Pitney.*

For defendant, *J. Vanatta.*

The opinion of the court was delivered by

DALRIMPLE, J. It appears, by the record in this case, that an action of ejectment was commenced in the Morris Circuit, by George O. Mulford against one David J. Ward, to recover the possession of a house and lot. Upon return of the summons, Peter A. Tunis was admitted as a proper person to defend the action separately from Ward, the original defendant. Tunis pleaded separately, and a trial of the issue thus raised resulted in a verdict and judgment in favor

of the defendant.   The plaintiff below thereupon brought this writ of error, and alleges errors in the admission and rejection of evidence, in the charge of the court, and refusal to charge, as represented by the plaintiff.

It appears, by the bill of exceptions, that David J. Ward was originally the owner of the premises in dispute.   On the 29th of August, 1866, he conveyed them to Mulford.   They were afterwards levied on and sold by the sheriff, by virtue of execution in his hands against Ward, and purchased by one David Pierson, who subsequently conveyed them to Tunis, the defendant below.   The conveyance by Ward to Mulford was prior to the recovery of the judgment by virtue of which the sheriff's sale was made.

The allegation of the defendant below on the trial was, that the deed from Ward to Mulford was made with intent to hinder, delay, and defeat the creditors of Ward, and was, therefore, as to creditors and those claiming under them, utterly void.

The court charged the jury that if the defendant had proved that the plaintiff's deed was made with intent to hinder, delay, and defeat the creditors of Ward, and that the plaintiff accepted it with notice of such intent, and to enable Ward to put the property beyond the reach of his creditors, as against the creditors of Ward and those claiming under them, the plaintiff's deed was void, and he acquired thereby no title to the property.

The evidence showed that Ward, the judgment debtor, paid the consideration money for the conveyance from Pierson to Tunis.   It was therefore insisted by the plaintiff, and the court was asked to charge the jury, that if Ward paid his money for the conveyance from Pierson to Tunis, and if Tunis took the deed for the benefit of Ward or his family, the defendant was not in a position to question the *bona fides* of the deed to Mulford.   The court declined so to charge, but, on the contrary, charged the jury in substance, that by virtue of the deed from Pierson to Tunis, the latter occupied the same position Pierson would have occupied, in case he had not con-

veyed, and that Tunis, having thus acquired the claims of the creditors, had a right to question the *bona fides* of Mulford's deed, no matter who furnished the money to pay the consideration. It is insisted that herein was error.

It must be assumed as an established fact, because the jury so found, that the deed from Ward to Mulford was fraudulent and void as to creditors. Therefore the sale and conveyance by the sheriff vested in Pierson the legal title to the property. His title was good as against everybody. His estate was an absolute fee simple, which he could sell and convey at pleasure. The levy, sale, and conveyance by the sheriff had divested Mulford of any interest which he may have acquired under the deed of Ward to him. I have failed to see by virtue of what rule of law the payment by Ward of the consideration money for the conveyance from Pierson to Tunis destroyed the title acquired from the sheriff. The most that can be said in favor of the position of the plaintiff is, that if Tunis purchased with the money of Ward under such circumstances as to raise an implied or resulting trust in favor of Ward, the latter might not be in a position to set up such trust in order to rid himself of the consequences of his fraud. But a court of law can only deal with the legal title. That, we find, has been conveyed by the sheriff to Pierson, and by Pierson to Tunis, and in this action it must prevail. If I apprehended aright the argument of the counsel of the plaintiff, it was that the payment by Ward, the judgment debtor, of the consideration money, eliminated from the case the question of debtor and creditor, and as between Mulford and Tunis, left the transactions in respect to the title to stand as if the sheriff's deed had not been made. But this position cannot be maintained. The sheriff's grantee had, by one course of legal proceedings, become the owner of the property. His title thus acquired could not be divested by the mere payment of money. The conveyance to Tunis was not nugatory because Ward furnished the money to pay the consideration. We have not been told by what operation of law the legal title held by Pierson was lost by an attempt to transmit it to

his grantee for a consideration paid by the judgment debtor. If Ward had reimbursed Pierson the amount for which the property was sold by the sheriff, and then paid the creditors the balance due them in full, I do not see upon what principle it could be held that the legal title had, without conveyance or release, been destroyed. The question now is not whether if Pierson's deed had been made directly to Ward he could have set up, as against his own prior deed, an outstanding title thus acquired. It may be that he would have been estopped by reason of the covenants contained in his deed, or on the ground that, by force of the statute of frauds, such deed as between him and his grantee was valid. The documentary evidence, in connection with the proof of the fraudulent character of the deed under which the plaintiff claims, shows the legal title to be in the defendant. We cannot, in this action, enter upon an inquiry as to who, by reason of implied or resulting trusts arising from the payment of the consideration money for any deed under which the defendant makes title, is the beneficial owner of the property. The charge of the court as to the legal effect of the payment by Ward of the consideration money for Pierson's conveyance, was right. It therefore necessarily follows that the refusal to charge as asked, was correct. The fact that Mulford once had actual possession under his deed, cannot vary the case. He had a right to the possession until the sheriff's deed was made. After that, whoever held the better legal title was entitled to the possession.

The next exceptions are to the admission of evidence. The wife of Ward, who was a party to the fraudulent deed, was a witness for the defendant, and allowed to testify, after objection, what was the intent or purpose with which she made the deed—why she acknowledged it a second time—that she did not understand, at that time, or before, that any payment was to be made for the conveyance, and that she was not willing to part with the property. This evidence all tended to show, so far forth, at least, as the witness was concerned, the object, purpose, and intent of the deed. The material

Mulford v. Tunis.

point of inquiry was as to the intent with which the deed was made. In the case of *Seymour* v. *Wilson*, 4 *Kernan* 468, the Court of Appeals of New York reversed the judgment below, because the precise kind of evidence now excepted to was overruled. Denio, C. J., in delivering the opinion of the court in that case, well remarks that "fraud against creditors always consisted in the corrupt intent of the parties to the transaction." Though Mrs. Ward had no interest in the premises, save her inchoate right of dower, yet she was made a party to the deed for a purpose very evident, if the end sought to be accomplished by the conveyance was as alleged by the defendant. If the grantors of this deed cannot be allowed to swear in terms, nor to facts and circumstances going to show that their intent in making the conveyance was fraudulent, then, on the other hand, I do not see how Mulford could be allowed to testify that he made the purchase and accepted the deed in good faith, and with no dishonest motive. With due deference, it seems to me that to hold any such doctrine would circumscribe within too narrow limits the means of elucidating truth, especially in cases of fraud. If this evidence, or any part of it, was not strictly admissible, I do not see that it could have worked any injury to the plaintiff, because the jury were very distinctly charged that, in order to invalidate Mulford's title, it must appear that he accepted his deed with notice of the grantor's fraudulent intent, and for the purpose of enabling Ward to put his property beyond the reach of his creditors.

On the argument, the plaintiff's counsel insisted that the evidence excepted to was admissible under the rule that where several persons are engaged in the pursuit of a common object, the acts and declarations of one while engaged in the prosecution of the common purpose, may be given in evidence against all. The rule of evidence is undoubtedly as stated, and so well established that citation of authorities in its support can hardly be needed. The following are, however, referred to: *Den* v. *Johnson*, 3 *Harr.* 88; *Benham* v. *Cary*, 11 *Wend.* 83; *Crary* v. *Sprague et al.*, 12 *Wend.* 41; *Waterbury*

v. *Sturtevant*, 18 *Wend.* 360·; 1 *Greenl. Ev.*, §§ 111, 112 ; 3 *Ib.* §§ 92–94. Whether the evidence under consideration, or any of it, comes within this rule, it is not now necessary to determine.

The only remaining exception is, because the question, "Was the transaction of passing the title and paying the money conducted in the ordinary way that such transactions are conducted?" put to a member of the bar of New York, was overruled. The witness to whom this question was put was present, as counsel for Mulford, at the time of passing to him the pretended title from Ward, and had been permitted to testify that he saw nothing in the whole transaction which led him to suspect that it was not *bona fide*. The question overruled had, therefore, been already, in substance, answered. But it was illegal in itself. An answer in the negative, such as the plaintiff sought, would have been calculated to mislead the jury, because the fact that the transaction of passing the title and paying the money was, in form, conducted in the ordinary way that such transactions are conducted, does not prove, or tend to prove, that the intent of the parties was not to hinder, defeat, and delay creditors. A transaction in itself very bad may have been clothed in very good form. That the witness should have been allowed to testify as an expert, cannot be admitted.

The result is, that no error having been shown in the judgment or proceedings below, they must be affirmed, with costs.

Judgment of the Circuit Court affirmed.